IN RE APPLICATION OF JUDITH ROMAN *v.* STATE WELFARE DEPARTMENT ET AL.

COURT OF COMMON PLEAS      NEW HAVEN COUNTY

Memorandum filed August 24, 1966

*Gumbart, Corbin, Tyler & Cooper,* of New Haven, for Judith Roman.

*Harold M. Mulvey,* attorney general, and *Richard E. Rapuano,* assistant attorney general, for the state welfare department.

*Wiggin & Dana,* of New Haven, for Children's Center.

*Edward T. Blair,* for Juvenile Court, second district.

GRILLO, J. The instant proceedings have been initiated by the applicant, Judith Roman, who seeks an order to allow her to inspect and copy medical, social, psychological and legal records pertaining to her two minor children, which records are in the custody of the respondents, the Juvenile Court, second district; the state welfare department; and the Children's Center, a child caring agency. This request was vigorously contested by the respondents.

These proceedings are brought under § 17-47a of the General Statutes, which provides as follows: "Records kept or information received by the welfare department and licensed child-care facilities and child-placing agencies regarding individuals in their care or custody shall not be open to inspection or their contents disclosed except for purposes directly connected with the provision of welfare services or upon order of a court. . . ." It might be stated that the Juvenile Court is not within the class named in the statute, but for reasons set forth below the disposition of this matter will not be made on that ground alone, insofar as the Juvenile Court is concerned, it being conceded some records are in the files of the Juvenile Court.

The following facts are not in dispute. On November 5, 1964, the applicant was convicted of the crime of cruelty to persons (General Statutes § 53-20) in the Circuit Court in the sixth circuit in a prosecution involving the aforesaid two minor children, Mark and Michael Roman. No appeal was taken from that decision. On January 27, 1965, the Juvenile Court of Connecticut, second district, as a result of a petition instituted by the welfare commissioner under § 17-61 of the General Statutes, held a hearing at which the applicant was present. As a result thereof, the children were committed to

the welfare commissioner, who, by virtue of this action, is now the statutory guardian of the children. This disposition is allowed by statute (§ 17-62) upon a finding by the Juvenile Court that a child is uncared for or neglected. No appeal to the Superior Court was taken by the applicant from that decision as permitted under § 17-70 of the General Statutes.

The applicant seeks an order of inspection on the ground that she does not know on what evidence or for what reasons she was divested of custody of her children and further seeks to determine whether or not she should seek return of their custody and control.

The statutes relating to a consideration of the present matter—§§ 17-61, 17-62, 17-63, 17-64, 17-66, 17-67, 17-68—provide for exhaustive investigations and other procedures by public officials, all designed to promote the welfare of and in the interest of the children involved relative to petitions such as the one under which the Juvenile Court acted. There is no claim made, nor was there any evidence indicating, that the proper statutory safeguards or procedure were not adhered to. Furthermore, it is presumed that until the contrary appears a public officer acting officially has done his duty. *State* v. *Lenihan,* 151 Conn. 552. The applicant was present at the Juvenile Court hearing and, of course, was present at the trial in the Circuit Court resulting in her conviction. The court is not cloistered in a convent of naivete, and it strains the credulity of the court to accept the contention of the applicant that she does not know on what evidence the Juvenile Court acted. She was present; she saw; she heard.

The information is not being sought by the applicant in conjunction with any action now pending,

nor is it ancillary to any other proceedings, judicial or administrative. Considering the sensitive area of Juvenile Court proceedings and the confidential records with which it is entrusted and which are protected from general public disclosure by statute (§ 17-57), the court cannot accede to a request which in effect amounts to a "fishing expedition." *Hurley* v. *Connecticut Co.*, 118 Conn. 276. Reports of interviews with the children, comments of a foster parent and child, comments of neighbors, the candid observations of social workers and psychiatrists' reports are all conceivably part of the record the applicant seeks. To allow a perusal of the records of the respondents on the nebulous grounds advanced could cause administrative chaos and pandemonium to reign. The applicant should not be allowed to indulge a hope that a thorough ransacking of any information and material which the respondents may possess would turn up evidence, especially since she does not claim that any of her rights were violated. *Pottetti* v. *Clifford,* 146 Conn. 252.

The applicant is not without a proper remedy. She could proceed under § 17-62 of the General Statutes for a revocation of the commitment by the Juvenile Court, and that court, being familiar with the matter, would be in an admirable and advantageous position to determine under § 17-57 what records the applicant should be allowed to view, since it can be assumed that the issue would be crystal clear at the Juvenile Court hearing.

The application is denied.