[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON ORDER TO SHOW CAUSE
Facts: . . . This case came before the court on an Order to Show Cause why the plaintiff's petition for orders of depositions and CT Page 2051 temporary injunction should not be granted. The petition was part of the prayer for relief in the plaintiff's Complaint dated October 24, 1996. That Complaint alleged in pertinent part:
14. On or about July 7, 1996, a tape recording ("Tape 1") was produced of a purported telephonic conversation between the plaintiff and fireman Vincent Graves. The plaintiff and Mr. Graves conducted the purported conversation in the privacy of their own homes and in the presence of no others
15. On or about July 11, 1996, a second tape ("Tape 2") recording was produced of a purported telephonic conversation between the plaintiff and fireman Vincent Graves. . . .
16. Both Tape 1 and Tape 2 were recorded without the express or implied consent, permission, or knowledge of the plaintiff and Mr. Graves. . . .
18. On or about July 13, 1996, said tapes were mailed to defendant, Carmine Zitani, and divulged to the members of Local 760's executive board. . . .
19. Said tapes were reduced to transcripts by a member, agent or representative of Local 760 and delivered thereby to Hartford city officials including, but not limited to, City Mayor, Michael Peters, City Manager, Saundra Borges, Deputy City Manager, Henry Langley, and Director of Personnel, Patricia Washington.
20. In October of 1996, said tapes and a typed transcript thereof was mailed to various outlets of the media. . . .
The Complaint further alleged that as a result of the delivery of the tapes to the media, the plaintiff's private telephone conversation had been broadcast for the general public, that the plaintiff suffered extreme emotional distress, defamation of his character, and invasion of his privacy and that the plaintiff sought information as to the identity of the individual or individuals responsible for recording and disseminating said telephone communication. . . .
On January 8, 1997 the plaintiff filed a Request for Leave to Amend the Complaint. . . . The Amended Complaint included the following amendments to the original Complaint: 1) it did not use the word "purported" when referring to the conversation between the plaintiff and Graves, thus affirmatively alleging that the plaintiff had, in fact, carried on the conversations with Graves; CT Page 2052 2) it did not contain a request for injunctive relief; and 3) it added certain paragraphs including the following:
19. On divers dates, unknown to plaintiff, following said transcription, the defendant, Local 760 and its members, disclosed and utilized the information contained on said tapes during the course of administrative proceedings.
23. The plaintiff intends to pursue several potential causes of action, including but not limited to: intentional and/or negligent infliction of emotional distress, invasion of privacy, and actions pursuant to Connecticut General Statutes § 52-570d, § 54-41r, § 7-101a, and § 7-465.
Both parties filed additional Reply Briefs on February 13, 1997. In their Reply Brief the defendants denied any knowledge as to who made the tapes, who delivered the tapes to the Union, and who delivered the tapes to the media. The Union admitted that on or about July 13, 1996 it received the tapes via the mail from an unknown person and that the contents of the tapes were transcribed by the Union and divulged to the City manager, Sandra Kee Borges in late August. However, the Union denied that it or its members delivered copies of the transcripts to various city officials. The Union also denied the use of the contents of the tapes "on multiple occasions during administrative hearings."
The Amended Complaint removed the need to address the defendants' first and third arguments in opposition to the bill of discover. However, the issue still before this court is whether the plaintiffs Amended Complaint contains sufficient allegations to permit the depositions and other discovery which the plaintiff seeks.
Discussion: The plaintiff brings this action pursuant to §52-156 of the Connecticut General Statutes, which provides, in pertinent part:
 Sec. 52-156. Preservation of the testimony of a witness. (a) Any person who desires to preserve the testimony of any witness, concerning any matter which is or may be the subject of a civil action, may present a petition in writing to any judge of the superior court, setting forth the reasons for his application, the name of the witness, the subject matter of the controversy and the names of all persons interested therein and praying that the deposition of the witness may CT Page 2053 be taken. . . .
The purpose of the statute was discussed in Petition of Christensen,25 Conn. Sup. 271, 273, 202 A.2d 834 (1964), wherein the court stated:
 This statutory provision appears to be a codification of the ancient bill in equity to perpetuate testimony. [Citations omitted.] The purpose of the procedure is well stated in Arizona v. California, supra, 347. "The sole purpose of such a suit is to perpetuate the testimony. To sustain a bill of this character, it must appear that the facts which the plaintiff expects to prove by the testimony of the witnesses sought to be examined will be material in the determination of the matter in controversy; that the testimony will be competent evidence; that depositions of the witnesses cannot be taken and perpetuated in the ordinary methods prescribed by law, because the then condition of the suit (if one is pending) renders it impossible, or (if no suit is then pending) because the plaintiff is not in a position to start one in which the issues may be determined; and that taking of the testimony on bill in equity is made necessary by the danger that it may be lost by delay." The procedure is confined to cases where extraordinary remedy is necessary in the interests of justice and there is a substantial risk that the testimony will be lost unless the extraordinary relief is granted. See 26A C.J.S., Depositions, § 23; 16 Am.Jur., Depositions, §§ 8, 9.
In Petition of Christensen, supra, the petition recited that Mrs. Christensen died on June 24, 1962, as the result of the negligent operation of an automobile by her husband, Richard G. Christensen. The petitioner was the administrator of the decedent's estate. The decedent's husband was insured by the Aetna Casualty and Surety Company, and the policy contained a clause excluding coverage on account of bodily injury to the spouse of the named insured. The petitioner alleged that the administrator believed that the exclusion was included in the policy by either mistake or fraud and that he intended to bring suit to reform the policy. The petition sought to depose the agent who had sold the policy. The, court denied the petition, stating:
 There appears no reason why the petitioner cannot immediately commence suit on whatever cause of action he claims and therein proceed in the usual manner. He has demonstrated no unusual circumstance which, in view of the CT Page 2054 objections of the respondent, justifies the extraordinary order which he seeks. To grant such a petition as this would open the door to an unlimited process of permitting depositions before suit for the purpose of determining whether a cause of action does exist and even developing a cause of action. The deposition being taken before suit and before issues are framed, it would be impossible to determine questions of relevancy or materiality.
25 Conn. Sup. at 274.(emphasis added).
In Muti v. New Haven, 24 Conn. Sup. 452, 194 A.2d 447
(1963), the plaintiff, claiming to have been injured by a fall caused by an extended fire hose on a New Haven sidewalk, applied for an order for the perpetuation of testimony under the provisions of § 52-156. The petition recited that the plaintiff intended "to bring suit against the city of New Haven and the employee or member of the city's fire department responsible for attending the hose in question, . . . that their identity is unknown to her but is known to the fire chief and certain police officers of the city present at the time of the accident; and that she must, have this information in order properly to institute her intended action."
The court permitted the petitioner to take the depositions of the two officers who were at the scene when she was injured and the fire chief, all of whom were alleged to know the identity of the fireman or firemen who placed the hose in the plaintiff's path. But the court cautioned against the misuse of a bill of discovery:
 It is a use which should not be permitted to be abused by broad "fishing expeditions" to enable a party to ascertain whether or not he has a cause of action or to assist him in framing a complaint. It should be carefully limited to situations, such as the one before us, where the ends of justice clearly require its use.
24 Conn. Sup. at 454 (emphasis added). . . .
In Pottetti v. Clifford, 146 Conn. 252, 150 A.2d 207 (1959) the Connecticut Supreme Court again addressed the parameters of a bill of discovery:
 The right to a discovery, however, does not extend to all material facts but only to those which pertain to a party's cause of action or defense. Discovery cannot be used to pry CT Page 2055 into the opposing party's case or to find out the evidence by which that case will be supported. [Citations omitted.] Discovery does not sanction impertinent intrusion, and there must be a showing of good faith and probable cause. [Citation omitted.]
 It is true that a petitioner should describe with such details as may be reasonably available the material he seeks. He should not be allowed to indulge a hope that a thorough ransacking of any information and material which the defendant may possess would turn up evidence helpful to the petitioner's case. [Citations omitted.]
146 Conn. at 259 and 263. (emphasis added). . . .
The Connecticut Supreme Court has most recently considered the bill of discovery in the case of Berger v. Cuomo, 230 Conn. 1,644 A.2d 333 (1994), a case where a minority partner brought a bill of discovery against the majority partner and the bank which held a mortgage on partnership property. The plaintiff, Berger, alleged that he owned a 25% interest in a partnership which owned real estate and the defendant, Cuomo, owned a 75% interest. The income from the partnership real estate for some time had been inadequate to pay the partnership's debts. Consequently, Berger and Cuomo had been contributing to their own funds to make up the deficit. Without telling Berger, Cuomo entered into an agreement with the defendant bank under the terms of which the bank agreed to limit Cuomo's liability on the partnership debt to a sum certain. Thereafter, Cuomo essentially abandoned the partnership property and his partner.
Berger alleged that he had potential causes of action against Cuomo for (1) Cuomo's forfeiture of his partnership interest; (2) contribution from Cuomo to the partnership for its continuing shortfall; (3) fraudulent conveyance against Cuomo as to Berger, and possibly as to the partnership; and (4) an accounting of funds while the partnership was managed by Cuomo. He further alleged that he needed documents in the possession of Cuomo and/or the bank in order to file a complaint. The trial court granted the bill of discovery, finding that Berger had established probable cause for one or more of his potential causes of action and that the discovery he sought would enable him to avoid a suit which was "clumsily or wastefully" filed. In upholding the decision of the trial court, the Supreme Court stated: CT Page 2056
 The plaintiff who brings a bill of discovery must demonstrate by detailed facts that there is probable cause to bring a potential cause of action. "Probable cause is the knowledge of facts sufficient to justify a reasonable man in the belief that he has reasonable grounds for presenting an action. . . . Its existence or nonexistence is determined by the court on the facts found." (Citation omitted.) Cosgrove Development Co. v. Cafferty, 179 Conn. 670, 671, 427 A.2d 841 (1980). Moreover, the plaintiff who seeks discovery in equity must demonstrate more than a mere suspicion; he must also show that there is some describable sense of wrong. . . .
230 Conn. at 7-8. (emphasis added.)
In all of the foregoing cases the plaintiffs established 1) that they had one or more valid causes of action, 2) that the information they sought was relevant to those causes of action, and 3) that the persons from whom the discovery was sought probably possessed the information. Even in the case of Muti v. New Haven,24 Conn. Sup. 452, 194 A.2d 447 (1963), which the plaintiff cites as analogous to the present one, the plaintiff affirmatively alleged that the fire chief and the police officers present at the scene of her fall knew the identity of the fireman or firemen who placed the hose in her path. Whereas, in this case the plaintiff alleges nothing to permit the conclusion that it is reasonably probable that 1) any of the defendants taped his conversations or 2) any of the defendants distributed the tapes to the news media. Therefore, the plaintiff has nothing but a "mere suspicion" that any of the defendants have any information which is relevant or material to his causes of action for the violation of § 52-570d of the Connecticut General Statutes, or invasion of privacy.
Section 52-570d provides:
 (a) No person shall use any instrument, device or equipment to record an oral private telephonic communication unless the use of such instrument, device or equipment (1) is preceded by consent of all parties to the communication and such prior consent either is obtained in wrong or is part and obtained at the start of, the recording . . .
Unlike § 54-41r, which is addressed below, § 52-570d does not prohibit the use of an illegally recorded conversation, but only the act of illegally recording the conversation. Since there is nothing CT Page 2057 presented by the plaintiff which permits any reasonable conclusion that any defendant recorded the conversations, the plaintiff has not established probable cause that the defendants violated § 52-570d. . . .
The only conduct by any defendant which is alleged in the Amended Complaint is the delivery of the tapes to the City Manager and other city officials and the use of the tapes in administrative hearings. Such conduct could constitute the "use" of tapes in violation of § 54-41r of the Connecticut General Statutes, which gives a civil cause of action to "any person whose wire communication is intercepted, disclosed or used." Such conduct may also support a cause of action for intentional infliction of emotional distress.
Since some conduct of the Union alleged in the Amended Complaint rises above the level of "mere suspicion", the petition for discovery should not fail completely, but it must fail insofar as it attempts to seek information about the recording of the tapes and their dissemination to the news media.
The Union has already admitted that it did provide the tapes to the City Manager. Therefore, the plaintiff could institute an action against the Union without the need for the present bill of discovery. However, Berger has recognized that seeking information to avoid instituting an action "clumsily or wastefully" is a legitimate purpose of a bill in discovery. In light of the narrow scope of the allegations which rise above mere suspicion, the scope of the discovery here must be narrow.
The scope of discovery sought in the Amended Complaint is far too broad. . . .
The plaintiff should be limited to use this action to obtain 1) the identities of the person or persons who delivered the tapes to the City Manager or other city officials; 2) information concerning the use of the tapes in administrative proceedings. Such information should be obtained by the use of written interrogatories directed to the Union. If such interrogatories prove insufficient then the plaintiff may depose a person or persons designated by the Union in the manner described in Section of the Practice Book 244(g).
The specific question before this court is whether the defendants have shown good cause why the depositions sought by the CT Page 2058 plaintiff should not occur. For the reasons set forth above, the defendants have shown good cause that those depositions should not occur. If depositions are required to satisfy the limited discovery permitted by this decision, they are to be limited in the manner set forth in the preceding paragraph.
Aurigemma, J.